In the Matter of the ESTATE OF FRANK E. HARDY, Deceased. WILLIAM J. HARDY, Appellant, v. CHARLES B. HARDY, Administrator with Will Annexed of the Estate of FRANK E. HARDY, Deceased; et al., Respondents.

No. 9562.
Submitted January 28, 1958. Decided May 8, 1958.
Rehearing Denied July 1, 1958.
326 Pac. (2d) 692.

John M. Lexcen, Jr., Washington, D. C., John M. Lexcen, Winsted, Minn., for appellant, John M. Lexcen, Jr., argued orally.

Paul H. Cresap, Sidney, for respondent.

MR. JUSTICE CASTLES:

This is an appeal from an order granting a new trial on the issues of lack of testamentary capacity and undue influence affecting the validity of the will of Frank E. Hardy, deceased.

The will of Frank E. Hardy was admitted to probate on December 10, 1952, by order of the district court of Richland County. Charles J. Hardy, deceased at the time of trial in the

instant case, was the applicant for probate of the will. Charles J. Hardy, together with one of the two subscribing witnesses, one Charles Flynn, both testified at the hearing on December 10, 1952, that the will was executed by Frank E. Hardy on August 25, 1949. At the hearing on December 10, 1952, Charles B. Hardy, one of the defendants herein and a son of Charles J. Hardy, was appointed administrator with the will annexed and continued to so act.

Frank E. Hardy died on October 23, 1952, having no wife, issue or parents surviving him. The petitioner in this action is the son of a deceased brother of Frank E. Hardy and one of the heirs. Charles J. Hardy was a surviving brother and legatee. Sadie Hartley and Elizabeth Lewis are sisters of Frank E. Hardy, and are heirs. Defendant Guinevere Beagle is the daughter of a deceased brother of Frank E. Hardy and is an heir. Defendants Erma Gail and Mary Frances Camalig are daughters of a deceased sister of Frank E. Hardy and are heirs. The defendant, George E. Brennan, and the Catholic Bishop of Great Falls, Montana, a corporation sole, are legatees of Frank E. Hardy.

By the terms of the will, Charles J. Hardy, Sadie Hartley, George E. Brennan and the Catholic Bishop of Great Falls, Montana, are named as legatees and devisees under the will of Frank E. Hardy.

Subsequent to the admission of the will to probate and on October 28, 1953, the plaintiff, William J. Hardy, filed his petition for contest of the validity of the will on the grounds of lack of testamentary capacity and undue influence. Defendants Charles B. Hardy, administrator with the will annexed of the estate of Frank E. Hardy, deceased, and Paul H. Cresap, administrator of the estate of Charles J. Hardy, deceased, answered by general denial the allegations of invalidity. Jury trial was demanded and the issues were submitted to a jury. A verdict for the plaintiff and against the validity of the will was returned by the jury on lack of testamentary capacity and undue influence. Judgment was entered accordingly.

Defendants, Charles B. Hardy, administrator with will annexed of the estate of Frank E. Hardy, deceased, and Paul H. Cresap, administrator of the estate of Charles J. Hardy, deceased, then served notice of intention to move for a new trial on several grounds on John M. Lexcen, as attorney for plaintiff, William J. Hardy, and on no other party. Subsequently, the trial court granted a new trial on the ground of insufficiency of evidence to support the verdict. The appeal by plaintiff is from that order.

The appellant assigns as error:

(1) The trial court did not have jurisdiction of the motion for a new trial;

(2) The evidence of lack of testamentary capacity was sufficient under the single instruction given on that issue;

(3) The evidence of undue influence was sufficient under the court's instructions on that issue; and

(4) The trial court could not accept and consider respondents' evidence of execution of the purported will on a date other than it bears when ruling on the motion for new trial.

A motion to dismiss the appeal was filed by one James Hardy, an heir of Charles J. Hardy, deceased, one of the defendants herein, based on lack of service on a member of the armed forces of the United States. The motion was made without any brief of authorities, on January 28, 1958, after respondents' brief had been filed in August 1955. The administrator of the estate of Charles J. Hardy had been served and had appeared by answer. We find no merit in the motion to dismiss.

The appellant's first assignment of error is predicated upon the fact that respondents filed and served upon the appellant, William J. Hardy, through his attorneys, a notice of intention to move for a new trial, but did not serve any notice of any kind upon the other named defendants. The record reveals that of the heirs, the parties entitled to share in the estate if the will were to be set aside, three reside in Richland County, Montana, one resides in Wyoming, one resides in Wisconsin, and one resides in California. The appellant contends

that the failure to serve the heirs, residing in Montana with notice of intention to move for a new trial is a fatal jurisdictional defect in the presence of which the trial court was without power to grant the motion for a new trial.

R.C.M. 1947, section 93-5605, provides that "The party desiring a new trial must * * * serve upon the *adverse party* and file with the clerk a notice of motion for a new trial * * *." Emphasis supplied.

R.C.M. 1947, section 91-1102, regarding contests of wills after probate provides, among other things that "a citation must be issued to * * * heirs residing in the state, so far as known to the petitioner." This section by its language seems to indicate that heirs residing outside the state are not entitled to notice of the contest. Nor are nonresident heirs entitled to notice of probate. R.C.M. 1947, section 91-807; In re Smith's Estate, 126 Mont. 558, 255 Pac. (2d) 687.

In the instant case the record reveals that citation, on filing of the contest of the purported will, was duly issued to the persons required to be cited by R.C.M. 1947, section 91-1102. The administrator with the will annexed of the estate of Frank E. Hardy and the administrator of the estate of Charles J. Hardy appeared and answered the petition. No other defendants appeared at or before trial, nor were any defaults entered against them for failure to appear.

Recently this court ruled in Central Montana Stockyards v. Fraser, 133 Mont. 168, 320 Pac. (2d) 981, 988, that under the provisions of R.C.M. 1947, section 93-8005, a party who had been served with summons and complaint and against whom a default was entered, and where no attempt had been made to vacate or set aside the default, was not an adverse party upon whom service of notice of appeal was required.

In that case the court said: " 'A defendant against whom a default is entered is not an adverse party to an appeal from a judgment against other defendants, which cannot affect his interests. Fearon v. Fodera, [supra] 169 Cal. 370; 148 Pac. 200, Ann. Cas. 1916 D. 312. A default suffered on the part

of a defendant is an admission and a reversal would not do away with such default, and as long as it stands any judgment rendered on appeal would not affect the judgment against such defaulting defendant.' MacDonald v. Superior Court, 101 Cal. App. 423, 281 Pac. 672, 673.''

The court then concluded that the defaulted party was not ''adverse parties'' upon whom notice of appeal was required to be served.

The wording of section 93-8005, R.C.M. 1947, on appeals, is similar in regard to the requirement of notice to that of section 93-5605, supra, on new trials, and we fail to see any different footing between appeals and motions for new trials in this regard.

In the case of In re McGovern's Estate, 77 Mont. 182, 195, 196, 250 Pac. 812, 815, the court said: ''Section 9733, Revised Codes of 1921 [now R.C.M. 1947, section 93-8005], requires notice of appeal to be served upon 'the adverse party or his attorney.' The statute, of course, requires service upon every 'adverse party' to the action or proceeding; but a party is 'adverse' only when he has 'an interest in opposition to the object sought to be accomplished by the appeal.' The adverse parties include 'the party whose interest in relation to the subject of the appeal is in conflict with the reversal of the order or decree appealed from, or the modification sought for by the appeal.' T. C. Power & Bro. v. Murphy, 26 Mont. 387, 68 Pac. 411.

''The nonappearing devisees were in the same position as to the estate as were the petitioners, and from a discussion on the merits of the questions presented by the appeal, it will be seen that the statutory rights of those others will not be injuriously affected by a reversal of the order appealed from, but that, in fact, their rights can only be protected and secured by a reversal of that order. They were not therefore 'adverse' parties on whom it was requisite that notice of appeal be served.

''This question has never before been presented to this court, but, under like statutes and a like situation, the Supreme Court

of California has repeatedly held: That such others 'having allowed the other interested persons to conduct the proceedings for their benefit, they must be considered as having consented that they should be represented by these other persons in any appeal that may be taken from the order thus procured.' In re McDougald's Estate, 143 Cal. 476, 77 Pac. 443; In re Scott's Estate, 7 Cal. Unrep. 187, 77 Pac. 446; In re Carpenter's Estate, 146 Cal. 661, 80 Pac. 1072; In re Ryer's Estate, 110 Cal. 556, 42 Pac. 1082.''

We think the reasoning of the Central Montana Stockyards case and In re McGovern's Estate case is correct.

However, the respondent urges that the case of In re Roberts' Estate, 102 Mont. 240, 58 Pac. (2d) 495, governs this case. In that case the question of service of notice of appeal was considered as to who were adverse parties. It concerned a question of service to heirs having an interest in the estate. The heir involved was a resident of California. He was attempted to be served by substituted service, but did not appear in the case. His interest would have been adversely affected by the appeal *had he been a party to it.* This court held that an adverse party, within the meaning of section 9733, R.C.M. 1921, (now section 93-8005) which required a notice of appeal be served on such a party, or his attorney, was one whose rights may be injuriously affected by a reversal or modification of the judgment appealed from, *irrespective of the fact that he did not answer the complaint.*

The court did not distinguish or even cite the McGovern case, although it was urged by the respondent in the case. We think that the holding of the Roberts case, supra, as far as what parties are adverse under R.C.M. 1947, section 93-8005, was in error, and we specifically overrule that part of the opinion.

For other cases by this court upon the question of who are adverse parties upon whom notice of appeal or motion for new trial must be served see, Reardon v. Gilligan, 122 Mont. 295, 202 Pac. (2d) 242; McNaught v. Weyh, 128 Mont. 418, 276

Pac. (2d) 491; In re Baxter's Estate, 94 Mont. 257, 22 Pac. (2d) 182.

In the instant case, no default was entered against the non-appearing parties, but they were nevertheless in default and were neither parties at the trial nor parties to the proceedings on the motion for new trial, nor have they attempted to appear as parties on this appeal. We believe the reasoning of the Central Montana Stockyards case, supra, applied to motions for new trial is apt.

The first specification of error is without merit.

Trial was had before a jury. Special interrogatories were submitted to the jury and answered as follows:

"1. Was the deceased Frank E. Hardy competent to make his Last Will and Testament at the time of the execution of the instrument heretofore admitted to probate as his Last Will?

"Answer: No.

"2. Did Frank E. Hardy execute the Last Will and Testament, involved in this action of his own free will and without the undue influence of Charles J. Hardy and Charles B. Hardy?

"Answer: No."

Judgment was entered accordingly and the probate of the will and the letters of administration with will annexed was declared annulled and revoked.

The motion for new trial was based upon the grounds of in-sufficiency of the evidence to justify the verdict and errors in law occurring at the trial.

The purported will was drawn by an attorney of some forty years experience at his office in Glendive on or about August 23, 1949. The will in two separate places shows execution on August 25, 1949, and was proven and admitted to probate on that basis. However, defendant's attorney, Paul H. Cresap, administrator of the estate of Charles J. Hardy, deceased, offered to prove to the court, in the absence of the jury, that the purported will of Frank E. Hardy was signed on a date different from that it bears. Counsel for the plaintiff refused to

544

stipulate to such a proceeding and went to trial on the issues as joined by the pleadings.

The plaintiff produced the following evidence in summary: Frank E. Hardy, deceased, was in the year 1949 residing at the Valley Hotel in Sidney, Montana. He was of advanced age at the time of the making of the purported will which bears the date of August 25, 1949.

Dr. Hyde of Sidney was his attending physician during that summer and had considerable social contact with deceased and saw him almost daily. Dr. Hyde testified that he was mentally incompetent during that time and he did not see him on any day that he was competent.

Witnesses William J. Hardy and Raymond Norby testified that during this summer Frank E. Hardy had become childish; that he was unable to carry on a rational conversation; and that he did not recall the extent of his property.

Testimony was also introduced to show: That in 1949 Frank E. Hardy lost track of certificates of deposit in the Richland National Bank in Sidney, Montana, in the amount of $40,000; that he lost track of repayment of a loan of $6,500 with interest; that he did not have the ability to care for himself physically; that he failed to recognize without pause a person with whom he had daily contact; that he could not retain a memory of his physical functions for a day; that his memory, sight, hearing and locomotion were impaired; that his deterioration was due to sugar diabetes, general arteriosclerosis, cerebral arteriosclerosis which could not be cured or arrested, that his mental and physical condition was the same in December 1949 and in January 1950 as in the earlier months of 1949; that on those dates he could not recall the death of his brother Sam J. Hardy, in whose home he was then living in Fairview, Montana; that on July 4, 1950, he confused his nephew, William J. Hardy, with another nephew, as he did again in 1951 and 1952; that he was obviously "slipping" in 1951; that during the year 1950 his living expenses were paid by advancement from his brother's estate because of his insistent attitude that

he should be able to live for $25 or $30 a month; that his mental condition was poor and worsened in the years 1950, 1951 and 1952.

Also it was shown that on August 18, 1949, but five days prior to the drafting of the purported will, Charles J. Hardy, brother of the said Frank E. Hardy and father of defendant Charles B. Hardy, had petitioned the district court to have Frank E. Hardy declared incompetent, alleging among other things "that that said Frank E. Hardy for several years last past has been in ill health and is advanced in years and that such advanced years and ill health have impaired his mind to the point where he is mentally incapable and incompetent to manage his affairs and property and incapable of taking care of himself."

On August 19, 1949, a copy of the petition and citation was served on Frank E. Hardy commanding him to appear in court on August 24. On August 23, in company with Charles Hardy, Frank E. Hardy requested an attorney to draw the purported will. On August 24, Charles J. Hardy testified in court concerning his brother's competency and asked that the matter be continued for a time during which Frank E. Hardy could be hospitalized. Continuance was granted. The purported will in question bears the date of August 25, 1949. Subsequently, on November 16, 1949, the petition to have Frank E. Hardy declared incompetent was dismissed on motion of the brother, Charles J. Hardy, who had been named residuary trustee.

The respondents produced testimony as to mental competency as follows:

The attorney who drew the will testified that the deceased was competent when he saw him and knew what he was doing. Dr. Hyde, on cross-examination, admitted that the deceased might have rational periods. Ruth Lund, a registered nurse who cared for the testator almost continually from November 1949 until May 1951, testified that he was competent. Also several interested witnesses testfiied as to his competency.

The evidence as summarized shows but one thing, that is,

it is conflicting as to the issue of competency. The jury was instructed on the matter and found that the deceased was not competent. We have carefully reviewed the instruction of the trial court regarding this issue and find no error.

Similarly, there was conflicting evidence presented on the issue of undue influence from which under proper instruction the jury could find by inference the presence of undue influence. It would avail nothing to detail in this opinion the voluminous record on the subject.

In connection with the issues of incompetency and undue influence, the appellant's fourth specification of error transcends both issues. As put by the appellant: the trial court could not accept and consider respondents' evidence of execution of the purported will on a date other than it bears when ruling on the motion for new trial.

The appellant argues that the respondents were estopped by:

(1) The rule against inconsistent positions in a judicial proceeding;

(2) The rule against inconsistent positions in a former and subsequent judicial proceeding; and

(3) The statute on conclusive presumptions, R.C.M. 1947, section 93-1301-6, sub. 3.

As previously related, the will was admitted to probate and the letters issued to respondent, Charles B. Hardy, on proof of execution of the will, by one of the subscribing witnesses on the date of August 25, 1949. The testimony of Charles J. Hardy, predecessor in interest of the other proponents of the will, and Charles Flynn, subscribing witness, asserted execution of the purported will on that date. At the trial, respondents denied execution on that date and sought to establish execution at an indefinite day approximately one year later.

The respondents, possessed of knowledge of the facts, allowed the original probate to stand unrevised and uncorrected for more than a year. Approximately sixty days before the one-year limitation on contest expired (R.C.M. 1947, section 91-1101), the appellant filed his petition to revoke probate of the

document bearing the date of August 25, 1949, and served the parties. The correction or amendment of the original probate was not sought by motion or otherwise until the time of the trial, approximately fifteen months after such original probate. It does appear, however, that counsel for respondents called counsel for the appellant some few days before trial and advised him that the date would be challenged. As previously related, the appellant refused to stipulate to any change in the issues framed by the pleadings. He directed his evidence largely to the date of execution recited in the purported will and shown in the proofs on probate.

We do not feel it necessary to rule as to whether or not an estoppel arose against respondents to assert a date different from that which was proven in a previous judicial process, upon which the respondents rely. The evidence in the instant case was admitted, and the jury considered it under the instructions of the trial court. The respondent argues that the evidence as to the different indefinite date of July or August 1950, was uncontroverted. This contention is fallacious since the record of the original probate proceeding was admitted into evidence and is directly opposed as to the date. Under the circumstances of this case, since conflicting evidence was submitted to the jury, the inconsistent position sought to be established by the respondents, at best could only have affected the weight of the evidence and the credibility of the witnesses. The jury, although not having an interrogatory specifically as to the date of execution of the purported will, must by implication have believed the date of execution to be the date the purported Will bore, August 25, 1949.

Where conflicting evidence is resolved by a jury, as here, ██ and substantial evidence is contained in the record to sustain those findings, we will not disturb those findings on appeal from an order granting a new trial. In re Silver's Estate, 98 Mont. 141, 38 Pac. (2d) 277; In re Carroll's Estate, 59 Mont. 403, 196 Pac. 996; Murphy v. Nett, 47 Mont. 38, 130 Pac. 451. The recital of the trial judge in his order granting a

548

new trial indicates that he believed one line of testimony different from that which the jury believed. This is not a sufficient reason to grant a new trial.

The respondents set up three cross-assignments of error:

(1) Proof of the correct date of execution should have been allowed in advance of the contest;

(2) The court erred in refusing defendants' offered instruction No. 28 regarding presumption of due execution; and

(3) The court erred in refusing defendants' offered instruction No. 15.

Respondents urge that since immediately prior to the trial they requested permission to submit proof of a different date of execution of the will from that shown on its face and that proven in the original probate proceedings, that the denial of this permission had the effect of shifting the burden of proof. The previous recitation of the circumstances of the dispute over the date of execution indicates that the respondents are not in a position to complain. We have examined the record carefully and find that full opportunity was given by the trial court for development of this evidence. If any error there was, it was harmless error.

The second error specified by respondents was that their offered instruction No. 28 was refused. That offered instruction read: "You are instructed as a matter of law that the fact that the will of Frank E. Hardy has been admitted to probate raises a presumption of due execution including the mental capacity of the testator."

Herein, the respondents sought to prove that due execution as previously proven was not in fact the true story as to the date of execution. Certainly in a case such as this where the contest of a purported will is based upon competency at the time of execution, for the proponents of the will to try to change the previous proof made and still in the same breath rely on the presumption of its due execution seems so inconsistent as to require no further consideration.

The respondents next urge that the court erred in refusing

to give their offered instruction No. 15 which read: "You are instructed that lawful influence, such as that arising from legitimate family and social relations, must be allowed to produce its natural results, even in influencing last wills. It is only when such influence is unduly executed over the very act of devising, so as to prevent the will from being truly the act of the testator, that the law condemns it as a vicious element of the testamentary act."

He argues that because of the close relationship between Frank E. Hardy and the respondents, such an instruction was necessary. This instruction was approved by this court in In re Bright's Estate, 89 Mont. 394, 399, 300 Pac. 229. However, the court gave several other instructions covering the same matter, and we do not find that error was committed in the failure to give this instruction.

For the foregoing reasons, the order of the district court granting a new trial is reversed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES ANGSTMAN and ADAIR, and THE HONORABLE T. E. DOWNEY, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.